[No. 10195.   Department One.   July 18, 1912.]

JOHN A. ULRICKSON, *Respondent*, v. JOHN A. SODERBERG
et al., *Appellants*.[1]

MASTER AND SERVANT—INJURIES—NEGLIGENCE—PROXIMATE CAUSE
—CONCURRENT NEGLIGENCE.   An employer is responsible for injuries
to his servant, a derrickman, caused by the fall of a boom through
an insufficient number of coils of cable on the drum, where his
failure to furnish sufficient cable was as much the proximate cause
of the accident as the negligence of the engineer in allowing too
much cable to run off the drum.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.   A verdict for
$6,000 for injuries sustained by a derrickman thirty-two years of age,
earning $3.50 per day is not excessive, where his arm was broken
in several places, and its use permanently impaired, his shoulder
was dislocated, he was in the hospital thirteen weeks, and had to
undergo four operations, incurring an, expense of $650 and losing
$1,000 in wages up to the time of the trial.

Appeal from a judgment of the superior court for King
county, Main, J., entered July 1, 1911, upon the verdict of
a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by an employee in a stone quarry.
Affirmed.

*Peters & Powell*, for appellants.
*Beeler & Sullivan*, for respondent.

PARKER, J.—This is an action to recover damages for per-
sonal injuries which the plaintiff alleges resulted to him from
the negligent operation of a derrick in the defendants' stone
quarry where he was employed as a derrickman.   A trial be-
fore the court and a jury resulted in a verdict and judgment
against the defendants, from which they have appealed.

There was evidence introduced upon the trial sufficient to
warrant the jury in concluding that the following facts were
established.   On July 27, 1910, and for some time prior

[1]Reported in 124 Pac. 909.

thereto, respondent was employed as a derrickman by appellants in their stone quarry. His duty was to fasten the grab hooks, which were hanging from the outer end of the boom of the derrick, to the stone, for hoisting and removing them from the quarry. The derrick consisted of a mast, about 75 feet high, from 12 to 18 inches in diameter, and a boom of nearly the same size, about 65 feet long, extending out from the foot of the mast. It was operated in the usual manner by wire cables running through pulley blocks to a donkey engine, a hundred feet or more distant from the derrick, and out of view of respondent from where he was required to work. One cable ran from a drum at the engine through pulley blocks at the foot and top of the mast to the outer end of the boom, and was for the purpose of raising and lowering the boom. Another cable ran from another drum at the engine through pulley blocks at the foot and top of the mast and at the outer end of the boom to the grab hooks, which hung from the outer end of the boom, and was for the purpose of hoisting the stone. The cable used for raising and lowering the boom was attached to the edge of the drum at the engine, where it commenced to coil around the drum by a clamp which was not strong enough to hold the cable when the weight of the boom was hanging upon it, unless there were several coils of the cable around the drum so that the friction therefrom rendered its hold upon the drum sufficient. It is not safe to have less than four or five coils around the drum at any time while the weight of the boom is upon the cable, otherwise the cable is likely to slip and break its fastening upon the drum and cause the boom to fall. To render the appliance entirely safe, it is necessary to have the cable of sufficient length so that there will be four or five coils around the drum when the boom is resting upon the ground. About July 4, 1910, the derrick was moved some sixty feet farther into the quarry away from the engine, and the length of the cable was not then increased sufficient to leave four or five coils around the drum, unless the outer end

of the boom be held at a distance of twenty feet or more above the ground. Respondent had no knowledge of the length of the cable and had nothing to do with the machinery.

On July 27, 1910, while respondent was performing his usual duties as derrickman, the grab hooks had been lowered to the ground for the purpose of hoisting stone, when he proceeded to make them fast to a stone. At that time, in obedience to a signal from the head derrickman, the engineer lowered the boom, and in doing so allowed the boom cable to run off the drum until there was only one coil left upon it, when he applied the brake, stopping the drum. The strain upon the cable broke its fastening upon the drum, and it slipped off, causing the boom to fall upon respondent, resulting in the injuries for which he claims damages in this action. After the removing of the derrick farther away from the engine, thus rendering the cable too short, the attention of appellants' foreman was called to the danger incident to the operation of the derrick without a longer cable. It is conceded that he recognized this danger, as the engineer also did, though they concluded that they could safely operate it in this condition temporarily, by taking care not to lower the boom too far so as to allow too much of the cable to run off of the drum.

It is contended that the negligence of the engineer, in allowing too much of the cable to run off of the drum before stopping it, was the proximate cause of the respondent's injury; that the engineer was a fellow servant with respondent, and therefore appellants are not liable. If this constituted the only negligence which the evidence tended to show, we might be called upon to determine whether or not the rules applicable to fellow servants would relieve appellants from liability. But it is manifest from the evidence that the jury were fully warranted in believing that the want of a cable of sufficient length was as much a proximate and efficient cause of the injury of respondent as the negligence of the engineer. The evidence was clearly sufficient to warrant the jury in

finding that appellants were negligent in failing to furnish a cable of sufficient length. It seems plain to us that the verdict can be supported upon the theory that the concurring negligence of both the engineer and appellants caused respondent's injury. This makes it immaterial whether the engineer and respondent were fellow servants or not. The rule of liability under such circumstances is stated in 2 Labatt, Master and Servant, at § 814 as follows: "It is well settled that a servant's action is not barred by the defense of common employment, where a breach of duty on the master's part contributed as a proximate cause to the injury." This rule was recognized by this court in *Costa v. Pacific Coast Co.*, 26 Wash. 138, 66 Pac. 398.

It is next contended that the verdict of the jury was so manifestly excessive as to indicate passion and prejudice on the part of the jury, and that respondent should be required to accept a less sum or submit to a new trial. The award of the jury was for $6,000. Respondent's injuries consisted of the breaking of his right forearm in several places, both bones being broken entirely off, his shoulder being dislocated, and he being otherwise severely bruised. He was confined to the hospital thirteen weeks. In the setting of the fractures, it became necessary for the doctors to perform upon him during that period not less than four operations, each of which required the administering to him of an anaesthetic, besides one or two other operations not so severe. The use of his arm is impaired to a considerable extent, probably permanently, though the doctors do not agree upon that. The rotary motion of the forearm and wrist is restricted to about ten per cent of normal. That may, however, be improved in time to twenty or even forty per cent, though none of the doctors claim that it will ever be more efficient than that. He incurred hospital and doctors' bills amounting to approximately $650. He has lost in wages, computed at his usual earning capacity up to the time of trial, approximately $1,000, so that he has been awarded for his pain and suffer-

ing and impaired use of his right arm approximately $4,250. His wages at the time of injury were $3.50 per day, which was apparently no more than his average earning capacity. He was thirty-two years old when injured, and was dependent upon physical work for a livelihood. While the award may seem large, we are not able to say that it was so excessive as to warrant our interference therewith on the ground of the jury's prejudice.

The judgment is affirmed.

CROW, CHADWICK, and GOSE, JJ., concur.